in the form described was seriously calculated to influence the jury against plaintiff's claim, but we do not rest our reversal on this alone.

[2] In this case, however, the court unfortunately, not only indicated by this form and language an opinion that the plaintiff's cause of action was without merit, but in one instance at least distinctly misstated the plaintiff's contention. Thus the court said:

> "By that he must satisfy you by a fair preponderance of evidence as to his contentions; that is, that the defendants agreed to pay him compensation for the selling of defendants' merchandise *while the plaintiff was selling his own merchandise in Boston to various houses*, as claimed by the plaintiff."

Neither in the complaint nor during the course of the trial did plaintiff make any such contention, nor was it claimed by him that defendants' agreement was to pay him any compensation while plaintiff was engaged in anything other than the sale of defendants' merchandise. By this sentence a circumstance that had appeared in evidence was transmuted into an integral part of the plaintiff's claim and contention, and there can be no doubt that the jury was misled thereby.

Judgment reversed, and new trial granted, with costs to appellant to abide the event. All concur.

———————

NEVINS v. HECKSCHER et al.   (No. 7699.)

(Supreme Court, Appellate Division, First Department.   October 22, 1915.)

JOINT ADVENTURE ⬡1—WITHDRAWAL—EVIDENCE.

    Plaintiff and defendants entered into a syndicate agreement to share the expenses of a joint venture to aid a corporation operating oil properties in Mexico to obtain an outlet for its products, and to divide the stock in the corporation which they expected to receive from it as a reward for their services. On January 23, 1906, plaintiff wrote one of the defendants a letter, in which he stated that so far as he was concerned such defendant could count him out of "the whole transaction." Prior to this letter the corporation had passed a resolution to issue 6,500 shares of stock to H., one of the defendants, plaintiff, and their associates as soon as regular railway service was in operation. On November 14, 1906, on plaintiff's report, the board of directors modified that resolution by reducing the number of shares to 3,250. On December 18, 1906, the stockholders adopted a resolution authorizing the issuance of such stock to H., plaintiff, and their associates. In plaintiff's letter to the board of directors, he referred to a syndicate composed of H., himself, and their associates, and the efforts of the syndicate to induce the construction of a railroad, and stated that "we will accept, as in full settlement for our services and disbursements in the matter of the proposed railway, 3,250 shares of your company's stock." *Held*, that these matters, occurring subsequent to the letter of January 23, 1906, showed that plaintiff did not, by that letter, withdraw from the joint venture, but that such letter referred to a different enterprise.

    [Ed. Note.—For other cases, see Joint Adventures, Cent. Dig. § 1; Dec. Dig. ⬡1.]

    Ingraham, P. J., dissenting.

Appeal from Judgment on Report of Referee.

Action by Thomas A. Nevins against August Heckscher and another. Judgment for plaintiff, and defendants appeal. Affirmed.

---

⬡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

As found by the referee, plaintiff and defendants entered into a joint venture to assist a corporation owning and operating oil properties in Mexico to obtain an outlet for its products. An oral syndicate agreement was made, whereby the parties agreed equally to share the expenses of the venture and to divide stock in such corporation, which they expected to receive from it as a reward for their services. The syndicate made various efforts to accomplish the purpose for which it was formed, and rendered services in recognition of which the corporation delivered to defendants 1,750 shares of its stock; but plaintiff had received no part thereof, although an accounting and his proportion of the stock had been duly demanded. On January 23, 1906, plaintiff wrote a letter to defendant Furber, in which he stated:

"I do not see that I have anything further to say to Mr. Heckscher or yourself in regard to taking over the railroad in Mexico. As far as I am concerned, you can count me out of the whole transaction. I do not see anything in it from my standpoint, nor am I going to assume large obligations at this time on a matter that shows such very uncertain returns. I have already invested all of the money I am going to invest in matters pertaining to oil. * * * I have already given the railroad matter all the time I consider necessary, and feel that I cannot be of further help in the matter."

The opinion of Referee Charles F. Brown was as follows:

The controlling question in this case is whether the plaintiff withdrew from the enterprise into which he had entered with the defendants by his letter of January 23, 1906. In my opinion he did not. That letter plainly refers to the Hidalgo Railroad enterprise. It is that enterprise which is referred to as the "whole transaction." That the plaintiff did not withdraw or intend to withdraw from the efforts the parties were making of having some means of transportation of the oil produced on the property of the Oil Fields of Mexico Company is clear from the events which occurred subsequent to that letter. On January 3, 1906, the corporation passed a resolution to issue 6,500 shares of stock to August Heckscher and Thomas A. Nevins and their associates, hereinafter called the "Syndicate," "as soon as regular railway service is in operation connecting Mexico City with the company's property at Furbero." On November 14, 1906, upon the report of Mr. Nevins, the board of directors modified that resolution by reducing the number of shares of stock to be issued to 3,250. The action of the directors was approved by the stockholders on December 18, 1906.

In the letter signed by Mr. Nevins addressed to the board of directors he refers to a syndicate composed of "Mr. August Heckscher, myself, and our associates," and refers to the efforts made by the syndicate after January, 1906, to induce the Mexican National system to construct a railroad to the oil fields, and says: "We will accept as in full settlement for our services and disbursements in the matter of the proposed railway, 3,250 shares of your company's stock." Nevins, Heckscher, and Furber appear to have been at the directors' meeting, and were recorded as not voting by reason of their interest in the subject matter. In the resolutions adopted by the stockholders on December 18, 1906, the president of the company was authorized to issue 3,250 shares of stock to "August Heckscher and Thomas A. Nevins and their associates." All this was nearly a year after the letter of January 23, 1906, and is inconsistent with the idea that Nevins had by that letter withdrawn from the syndicate and surrendered his right to participate in any awards which the company might make to the syndicate for its labors. Thus the matter stood until about the time when Furber paid off the advances which had been made by Nevins. On May 5, 1908, the company voted to deliver to "August Heckscher and his associates, in full settlement of their services and disbursements incident to the proper construction of railway connection between Furbero and the city of Mexico and in the negotia-

tion of a certain contract dated December 4, 1907, between the corporation and S. Pearson & Son, Limited," 1,750 shares of stock. The delivery of the 1,750 shares of stock was for past services and Nevins was clearly entitled to his share thereof.

I find that Palmer did not buy out Nevins' share in the syndicate. It seems to me wholly inconsistent with such a transaction that Furber should appropriate $5,000 of the money received from Palmer and give his individual note for that amount to Nevins. I also find that the original agreement between Nevins and Furber was that Furber would repay Nevins for the advances which he made. This view of the testimony is the only one consistent with the repeated demands made by Nevins upon Furber for repayment of the money which he had advanced, and it does not appear at any time that Furber denied his liability. I find, therefore, that Nevins is entitled to receive from the defendants 583⅓ shares of the stock of the Oil Fields of Mexico Company. There is no necessity for an accounting, as it is conceded that the company delivered 1,750 shares of the stock to the defendants. There is no proof, however, of the value of the stock. The decree must provide, therefore, that if the defendants fail to deliver 583⅓ shares of the stock to the plaintiff within 20 days after the entry of the decree and service upon them of a copy thereof, the plaintiff may apply for leave to give proof as to the value of the stock.

Either party may present to me requests to find within 20 days from this date.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, SCOTT, DOWLING, and HOTCHKISS, JJ.

A. Furber, of New York City, for appellants.
A. Benedict, of New York City, for respondent.

PER CURIAM. Judgment affirmed, with costs, on the opinion of the referee. Order filed.

INGRAHAM, P. J., dissents.

---

(92 Misc. Rep. 156)

AMERICAN LACE MFG. CO. v. LEVY et al.

(Supreme Court, Appellate Term, First Department. October 25, 1915.)

1. ACCOUNT STATED ⬦⟞⟞8—DEFENSES.

An account stated is open to impeachment for fraud, mistake, or error; so, in an action on an account stated, a counterclaim based on a breach of warranty of materials, which could not be discovered until after manufactured into garments and they were worn, will be sustained.

[Ed. Note.—For other cases, see Account Stated, Cent. Dig. §§ 50–56; Dec. Dig. ⬦⟞⟞8.]

2. APPEAL AND ERROR ⬦⟞⟞1031—REVIEW—INFERENCES.

Where the court erroneously excluded all evidence of defendants' counterclaim, the cause must be treated on appeal as if the evidence would have established it.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4038–4046; Dec. Dig. ⬦⟞⟞1031.]

3. APPEAL AND ERROR ⬦⟞⟞274—DENIAL OF MOTION FOR NONSUIT—EXCEPTIONS.

That defendants failed to except to the denial of their motion for nonsuit is not a waiver of the exclusion of evidence in support of their counterclaim.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1591, 1592, 1605–1607, 1624, 1631–1645; Dec. Dig. ⬦⟞⟞274; Trial, Cent. Dig. § 375.]

⬦⟞⟞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes